---

(Cuyahoga Co. O., Common Pleas, 1901.)
STATE EX REL. JUDSON v. WILLIAM R. COATES, CLERK.

*Officers—Relation ex lege—Fees—*

(1.) The jural relation between a ministerial officer and one who, by virtue of circumstances, is entitled to his official services, is a relation that arises *ex lege,* and not *ex contractu,* and it therefore excludes the right of the officer to demand prepayment of fees, unless such right is conferred by statute.

*Prepayment of fees—No statutory provision—*

(2.) The matter of the taxation of costs in civil actions, of requiring payment of, or

security for costs, is under legislative control; and while the legislature has power to provide for prepayment of fees for issuing summons, it has not done so, and therefore such prepayment cannot rightfully be demanded.

*Rule as to fees of clerk of courts—*

(3.) In counties where the clerk of courts is compensated by fees, payable by the person for whom he renders official services, the rendition of services makes the recipient his debtor; but this is not so in Cuyahoga county, where, under the local salary law, the earnings of all the county officers are turned into the public treasury, to the credit of a fee fund, from which the several officers are paid a fixed annual salary.

MANDAMUS.

PHILLIPS, J.,

Several actions are pending in this court, brought by persons claiming to be heirs of Leonard Case, deceased, for the recovery of real estate situate in the city of Cleveland. In each action there are from eight hundred to one thousand defendants, and about the same number of distinct parcels of land are described in each petition. There are many plaintiffs in each action, nearly all of whom are non-residents. A motion to require the plaintiffs to secure costs in each of these actions was heretofore submitted to this branch of the court. This motion was granted in cases wherein all the plaintiffs were non-residents, and was refused in cases wherein any of the plaintiffs were residents. *Eudora Mining Co. v. Barclay,* 26 So. Rep., 113 (122 Ala. 506).

In one of these actions, *Hildreth* v. *Abel,* wherein security for costs was not so required, the relator herein, one of the plaintiffs in said action, tendered to the defendant herein a precipe for summons; but the defendant refused to accept or file the precipe, or to issue a summons, unless his legal fees for such filing and issuing were first paid; and this action is brought, praying that a writ of man'amus issue to the defendant, commanding him, as clerk of this court, to accept and file said precipe, and to issue summons according to its command. This presents a question important in practice, and of unusual importance in the particular instance, for the amount of the fees demanded is unusually large.

Counsel for relator make two contentions:

First. That in no case can the clerk demand prepayment of his fees for the issuing of a summons; and

Second. That if such demand may rightfully be made in jurisdictions where the fees go directly to the officer who earns them, it cannot be made in this county, because, by virtue of our local salary law, the fees earned and collected by the clerk are to be by him paid into the county treasury, to the credit of a "fee fund," from which he and other county officers are compensated by an annual salary.

In support of the former contention, it is maintained in argument that the courts of Ohio are, and of right must be, open to all suitors, and open to all alike; and that the clerk may not discriminate between suitors, by requiring prepayment of his fees from one, and not from another.

The exact question here presented has not, to my knowledge, been decided by any court in this state. The question is therefore *res integra,* and must be determined upon principle, and in the light of all that the legislature has enacted upon the general subject. The solution of the case involves a consideration of (1) the liability of litigants for costs made by them, (2) the extent and nature of a plaintiff's right to the process of the court, and (3) the nature and extent of the obligation of the clerk to issue a summons.

There is a notion, somewhat prevalent, that the courts are open and free to all suitors. This is true only in a modified sense. The courts are *open* to all suitors—the constitution requires this; but *resort* to the courts is free only in a qualified sense. The administration of justice is, of course, a matter of public concern; but in so far as it is for the protection of private rights, it is largely a matter of private concern, and of individual benefit. Accordingly, it has always been the policy of judicial administration to require individual suitors to pay at least a part of the expenses incurred at their instance, and in their interest. The state pays the judges of its courts of general jurisdiction; in some jurisdictions, the jury fees are paid by the public; and in some cases involving only public rights, all the costs are paid from the public treasury.

In all times, each party to a civil action has been, both primarily, and ultimately, liable for his own costs; and in early times, judgment for costs was not allowed to the prevailing party. And where the prevailing party is given judgment for his costs, it is generally said to be upon the theory that he has paid his own costs, and that the judgment is for his reimbursement. For the reason that the allowance of costs to the prevailing party is for his reimbursement, the judgment, therefore should not include the costs of the other party, as he is himself directly liable therefor. *Naper* v. *Bowers,* Wright, 692; *Bliss* v. *Long* 5 Ohio, 276; *Russell* v. *Giles,* 31 Ohio St., 293.

In *Bell* v. *Bates,* 3 Ohio, 380, the court says: "There were no costs, *eo nomine,* at common law, although in actions sounding in damages,

a practice prevailed of allowing to the plaintiff, in the assessment of the damages, a sufficient sum to remunerate him for his necessary expenses. But, in consequence of the hardship which a plaintiff must sustain, in expending large sums of money for the purpose of obtaining his right for which he would have no amends, the statute of Gloucester (6 Ed. 1) was passed, allowing costs in certain cases. The subject was frequently, at subsequent periods before the parliament of England, and such provisions made as justice and necessity seemed to demand. "In this state, costs, as a general rule, have never been allowed to the party recovering judgment. The amount to be taxed, however, has been varied from time to time, the whole being regulated by statute."

Bouvier, in his Law Dictionary, after referring to the statute of Gloucester, and stating that a similar statute has been enacted in all of our states, says:

"A party can in no case recover costs from his adversary, unless he can show some statute which gives him the right."

In *Farrier* v. *Cairns,* 5 Ohio, 45, the court says:

"Costs are unknown to the common law. They are given only by statute, and may be changed, or entirely taken away, at the will of the legislature."

From these considerations and authorities, it seems to be the policy of the law (1) that each and every litigant shall be primarily liable for all costs made by him, and (2) that the whole matter of the taxation of costs, of requiring payment of, or security for costs, and of allowing judgment for costs, is under the legislative control. Accordingly, our legislature has made very full provision for requiring security for costs, and for the taxation and the collection of costs. Sections 1318, 1338, 5340, 5353, Revised Statutes.

Let us now consider the jural relation between a ministerial officer and one who is so situated as to be entitled to his official services. To understand this relation rightly, and to properly designate and place the right and the duty arising therefrom, we must have recourse to the accepted definitions and classification of legal rights and obligations. Writers on analytical jurisprudence, class private rights as rights *in rem* and rights *in personam.* The essential idea of a right *in personam* is the right to exact performance of an obligation from a certain person. The rights *in personam* arise either *ex contractu* or *ex lege;* the former result from executor contracts, while the latter arise from various jural relations, without the intervention of either contract or delict. When any one has a right to have a ministerial

officer perform an official act for him, the right is *in personam,* and this right and the correspondent duty arise *ex lege.*

Holland says: "Any member of the community who becomes entitled by circumstances to call upon a public official to exercise his functions on his behalf, acquires thereupon a right *in personam* against such official to that effect." Hol. Jurisp. (5th ed.) 215. And he classes the right as one arising *ex lege,* and not *ex contractu.*

Mechem says, that a public officer whose duties are ministerial owes to the public the general duty of official good conduct and a faithful administration of his office; and he is under a special obligation to an individual for whom, and at whose instance, he renders official service; and it is the right of every person, on lawful occasion, to avail himself of the services of such officer. Mechem on Public Officers, 592, 904.

If I have reasoned correctly as to the jural relation between a ministerial officer and one who is entitled to his official services, I have shown that the right of the one, and the duty of the other, do not rest upon contract, but arise by operation of law. It must follow, therefore, that if there is a right to demand prepayment of fees, such right must arise *ex lege,* and cannot rest upon principles that govern the contract relation. Where such officer is to be compensated by fees, payable by the person for whom he renders official service, there is no doubt that the rendition of services makes the recipient his debtor; and some courts have held, and others have said, that the officer may refuse to act, unless his fees are prepaid. *Duy* v. *Knowlton,* 14 Fed. Rep., 107; *Ripley* v. *Gifford,* 11 Iowa, 367.

Mechem, in his work on Public Officers, says: "In the absence of a statute to the contrary, a public ministerial officer entitled to a fixed fee, may, unless he has waived his right, insist that the individual who requires his services shall pay his fees before the service is rendered." Sec. 887.

The only authority cited to sustain this proposition is *Ripley* v. *Gifford, supra.* But an examination of this case shows that the statement therein is entirely *obiter.*

I am inclined to think that the distinction I have pointed out as to the nature of the jural relation between an officer and one entitled by circumstances to his official services, has not been clearly in mind in the few instances in which the right of the officer to demand prepayment has been sanctioned. The well established principle, that the whole matter of fees and costs is under the legislative control, comports well with the principle that the rights

and duties here under consideration arise *ex lege*. And the fact that there are numerous statutory provisions for the collection of fees after they have been earned, makes it clear that the legislature has not contemplated compulsory prepayment.

I conclude, therefore, that until the legislature shall authorize the clerk to demand prepayment of his fees as a condition precedent to the issuing of a summons, he can not, in jurisdiction where he is compensated directly by fees earned, impose such condition, where the party is otherwise entitled to the issuance of the writ. And I think this view, deduced from principle, has been sanctioned in the few instances in which the courts of this state have made any expression of opinion upon the subject.

In *Abbey* v. *Fish* 23 Ohio St., 403, 413, Judge McIlvaine, speaking for the court, says:

"In my opinion, the right to recover a judgment for costs is not given to the successful party because he has paid the taxable fees which were earned at his instance, or because he is supposed to have paid them, but because he is liable to pay them at the suit of those who earned them. * * * The judgment is given for the purpose of reimbursement to the extent he may have pai' fees, and for the purpose of indemnity to the extent he may be liable to pay them in the future. * * * It is said in argument," says Judge McIlvaine. "that officers and others entitled to taxable fees may, in all instances, demand payment in advance, and therefore it should be inferred that the legislature did not intend to secure to them any interest or equity in the judgment for costs. Whether the premise in this argument be correct, is a question of some doubt; but whether it be or not, it is quite clear that it never has been the policy of the legislature to compel prepayment in all cases, as is manifest from the many provisions made for their collection after credit given."

The circuit court of Hamilton county in *State* v. *Bates*, 5 C. C., 18, held that the court of common pleas, having found a plaintiff entitled to a decree of divorce, can not require her to pay the costs in the case as a condition precedent to the entry of the decree. The court said: "A rule of the court requiring the petitioner in such case to pay the costs before the entry of the decree, is not warranted by, but is inconsistent with, the laws of the state."

Our Supreme Court has held, in *Heffner* v. *Scranton*, 27 Ohio St., 579, that the trial court has not the power to impose the payment of costs as a condition precedent to the granting of a motion for a new trial.

In *Whitley* v. *Long*, 17 W. L. B., 86 the court of common pleas of Highland county held that the sheriff can not demand pre-payment of his fees for the service of a summons. The decision is rested, in part, upon the ground that the services of a sheriff are of a public nature, and are not in the nature of a claim for work and labor, and that the administration of justice is a public matter, and not a matter of dollars and cents only.

These meager expressions of the courts of this state tend to sustain the conclusion I have reached, and have announced, that without legislative authority, the clerk of this court, if compensated directly by fees earned, could not make the pre-payment of his fees a condition precedent to the issuing of a summons, where the party is otherwise entitled to the writ. It must be axiomatic, that, in the absence of specific legal provision, the right to demand pre-payment for services belongs only to a contract relation of the parties concerned.

As before stated, it has been held by the courts of some other states, that the clerk may demand pre-payment of his fees, before issuing a summons. But these holdings are rested upon what seems to be an erroneous view of the jural relation between the clerk and the person requiring his services, treating it as essentially a contract relation to be entered into by agreement, and authorizing the clerk to impose as a condition precedent, the payment of his fees in advance. If that were the right view of the matter, then the party who is able to pay fees in advance, may have an undue advantage over an adversary who is not able so to pay; and an impecunious defendant, forced into court against his will, may be unable to obtain process in the conduct of an otherwise available defense; and it would be within the power of the clerk to discriminate between suitors, and may be, to thwart the administration of justice. I concede that the legislature may authorize the demand of fees in advance, but it seems to me that the power does not belong to the officer, without statutory authority.

But whatever the rule may be in jurisdictions where the fees earned go directly to the clerk, as his compensation, it must be clear that under our local salary law there can be no such right. By this law, the earnings of all the county officers are turned into the public treasury, to the credit of a fee fund, from which the several officers, including the clerk, are paid a fixed annual salary. This salary law certainly eliminates every semblance of employe and employer from the relation between the clerk and a litigant who requires his services.

One section of this law requires each officer to collect all fees, etc., accruing to his office "before or at the time they are earned." But this requirement to collect fees before earned, is expressly limited to cases or instances in which such collection in advance is now "authorized by law." The statute simply *enjoins a duty*—it does not *confer power*.

Alternative writ granted.

*G. W. Adair* and *C. A. Neff,* for Relator.
*Kaiser & Taft* and *W. E. Cushing.* for Defendant.

---

*G. W. Adair* and *C. A. Neff,* for relator, cited:

The language of the statutes is mandatory: Secs. 5037, 4959, 5036, 4959, Revised Statutes.

A ministerial officer cannot demand prepayment of his fees: *Whitley* v. *Long,* 17 W. L. B., 86; *Moriarity* v. *Devine,* 1 C. C., 82.